2004 WY 5

In the Matter of the ESTATE OF
Vernon R. DRWENSKI,
Deceased:

Erin Marie Connely, as Personal Representative of the Estate of Vernon R. Drwenski; Erin Marie Connely, Individually; and Drwenski, LLC, a Limited Liability Company, Appellants (Plaintiffs),

v.

M. Scott McColloch, Esq.; McColloch and Burns, a Partnership; and Michelle McColloch Burns, Esq., Appellees (Defendants).

Erin Marie Connely, as Personal Representative of the Estate of Vernon R. Drwenski; Erin Marie Connely, Individually; and Drwenski, LLC, a Limited Liability Company, Appellants (Plaintiffs),

v.

M. Scott McColloch, Esq.; McColloch and Burns, a Partnership; and Michelle McColloch Burns, Esq., Appellees (Defendants).

Nos. 03–29, 03–30.

Supreme Court of Wyoming.

Jan. 28, 2004.

Representing Appellants: Eldon E. Silverman of Preeo Silverman Green & Egle, P.C., Denver, Colorado.

Representing Appellees: Timothy W. Miller of Reeves & Miller Park Street Law Office, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Vernon Drwenski died before his divorce was finalized. As a result, his widow, Trudy Drwenski, inherited money from the estate she would not have inherited if she and Mr. Drwenski had been divorced. Mr. Drwenski's daughter, Erin Connely, sued her father's divorce attorney, Scott McColloch, because he failed to finalize the divorce before Mr. Drwenski died. The district court granted Mr. McColloch's motion for summary judgment finding he owed no duty to Ms. Connely or to the estate. We affirm the district court's judgment.

## ISSUES

[¶ 2] Ms. Connely raises the following issues:

1. Were there adequate facts in the record below to show that Connely individually, as a third-party beneficiary of her father, had a legal right to [make a] claim against Attorneys for legal malpractice occurring during the lifetime of her father?

2. Did Connely, as Personal Representative of the Estate, have a cause of action to pursue the attorney malpractice case under the Wyoming survival statute?

3. Should this matter be remanded in that the existence of a duty in a complex case such as this is a mixed issue of fact and law?

[¶ 3] Mr. McColloch rephrases the issues as:

1. Whether a lawyer who represents a client in a divorce owes a duty to his client's child?

2. Whether an estate may pursue a claim where it has no damages?

[¶ 4] In her reply brief, Ms. Connely raises the following issues:

1. The duty of an attorney to an intended third-party beneficiary has yet to be decid-

ed in Wyoming and its acceptance would be consistent with good public policy and past Wyoming precedent.

2. The cause of action for legal malpractice accrued prior to the client's death and thus the claims survive in his estate.

## FACTS

[¶ 5] In 1999, Mr. Drwenski, suffering from cirrhosis of the liver, was trying to get his life in order. First, he wanted a divorce from his wife, Trudy Drwenski. He hired Mr. McColloch to represent him in this matter,[1] and in April of 1999, he filed for divorce from Mrs. Drwenski.

[¶ 6] Four months later, Mr. Drwenski had a falling out with his daughter, Rian Smith, and decided he wanted to change his will. On September 2, 1999, he executed a new will leaving the bulk of his estate to another daughter, Ms. Connely, and named her personal representative for the estate. Mr. Drwenski's new will recited the fact that he was seeking a divorce and recognized that Mrs. Drwenski would be entitled to twenty-five percent of his estate under Wyoming's elective share statute in the event his divorce was not final at the time of his death.

[¶ 7] In September of 1999, Mrs. Drwenski offered to settle the divorce for $145,000. Armed with a power of attorney, Ms. Connely encouraged Mr. Drwenski to accept the offer. He chose not to do so. Instead, he made a counter-offer of $100,000, which he later withdrew.

[¶ 8] Mr. Drwenski died on November 30, 1999, before the divorce was finalized, leaving an estate valued at over three million dollars. Because Mr. Drwenski was not divorced on the date of his death, Mrs. Drwenski was entitled to twenty-five percent of his estate under Wyoming's elective share statute.[2]

[¶ 9] Ms. Connely sued Mr. McColloch alleging, among other things, that he breached his duty of responsibility to Ms. Connely and to the estate.[3] The gravamen of her complaint was that Mr. McColloch failed to do anything to obtain the divorce from the time he was retained in April 1999 until the time of Mr. Drwenski's death six months later. Ms. Connely alleged Mr. McColloch knew that Mr. Drwenski's marriage to Mrs. Drwenski took place "late in life," his health was fragile, he was terminally ill, and given his particular vulnerability, he was in need of the utmost prompt, thorough, and competent legal representation. The complaint further alleged, as evidence of Mr. McColloch's breach of his duty, that no discovery was undertaken, Mr. Drwenski's deposition was never taken, no request for a scheduling conference or trial date was ever made, and essentially no action was taken at all to further the progress of the divorce proceeding.

[¶ 10] The district court granted Mr. McColloch's motion for partial summary judgment holding that he had no legal duty under Wyoming law to a nonclient under these circumstances. Further, the district court held the estate was not damaged because it did not suffer a financial loss.

[¶ 11] This appeal followed.

## STANDARD OF REVIEW

[¶ 12] Our standard for reviewing summary judgments is well established:

'Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We examine the record from the vantage

---

1. Mr. McColloch was also hired to represent Mr. Drwenski in four other unrelated lawsuits.

2. *See* Wyo. Stat. Ann. § 2–5–101(a)(ii) (LexisNexis 2003).

3. In its entirety, the complaint contained seven allegations: (1) professional negligence regarding representation of deceased during his life-

time; (2) recovery of improper and excess fees; (3) breach of duty or responsibility to Ms. Connely; (4) declaratory judgment in favor of the estate; (5) professional negligence with regard to representation of the estate; (6) billing fraud and conversion; and (7) negligent misrepresentation. Mr. McColloch's Motion for Summary Judgment addressed counts one, three, and five of Ms. Connely's complaint.

point most favorable to the party who opposed the motion, and we give that party the benefit of all the favorable inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. We do not accord any deference to the district court's decision on issues of law.'

*Mathewson v. City of Cheyenne,* 2003 WY 10, ¶ 4, 61 P.3d 1229, ¶ 4 (Wyo.2003) (quoting *Andersen v. Two Dot Ranch, Inc.,* 2002 WY 105, ¶ 10, 49 P.3d 1011, ¶ 10 (Wyo.2002)).

[¶ 13] This Court has stated that summary judgments are not favored, especially in negligence actions. *See, for example, Roitz v. Kidman,* 913 P.2d 431, 432 (Wyo.1996). This is particularly true in malpractice actions. *DeHerrera v. Memorial Hospital of Carbon County,* 590 P.2d 1342, 1345 (Wyo.1979). The mixed questions of law and fact usually involved in a negligence action concerning the existence of a duty, the standard of care and proximate cause "are ordinarily not susceptible to summary adjudication." *Hozian v. Weathermon,* 821 P.2d 1297, 1298 (Wyo.1991). Whether a particular defendant's actions have violated the required duty is generally a question for the jury. *Bancroft v. Jagusch,* 611 P.2d 819, 821 (Wyo.1980). The existence of a duty is, however, a question of law, " 'making an absence of duty the surest route to summary judgment in negligence actions.' " *Schuler v. Community First National Bank,* 999 P.2d 1303, 1306 (Wyo.2000) (quoting *Daily v. Bone,* 906 P.2d 1039, 1043 (1995)). One consequence of the fact that summary judgments are not favored in negligence actions is that, once granted, they are subject to "more exacting scrutiny" on appeal. *Woodard v. Cook Ford Sales, Inc.,* 927 P.2d 1168, 1169 (Wyo.1996).

[¶ 14] Questions relating to the parties' intent are usually factual, precluding summary judgment; however, where the parties' intent is clear such that reasonable minds could not differ, summary judgment is appropriate. *Cordero Mining Co. v. United States Fidelity and Guarantee Insurance Co.,* 2003 WY 48, ¶ 10, 67 P.3d 616, ¶ 10 (Wyo.2003); *see also Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686 (Wyo.1996); *Detroit Institute of Arts Founders Society v. Rose,* 127 F.Supp.2d 117 (D.Conn.2001).

[¶ 15] A properly drawn inference contrary to direct testimony can serve to structure a genuine issue of material fact. This Court is required to review the record in the light most favorable to the non-moving party, affording to that party all favorable inferences which may be drawn from the facts presented in the record. However, we have also stated:

> "Guess-work cannot be substituted for evidence or inference, for 'an inference is the conclusion drawn on reason from premises established by proof. In a sense, it is the thing proved. Guess-work is not.' *Whitehouse v. Bolster,* 95 Me. 458, 50 A. 240." *Wright v. Conway,* 34 Wyo. 1, 241 P. 369, *reh. denied* 34 Wyo. 42, 51, 242 P. 1107, 1110 (1925).

*Whipple v. Northern Wyoming Community College Foundation of Sheridan (Estate of Roosa),* 753 P.2d 1028, 1034 (Wyo.1988).

## DISCUSSION

### *Duty of Attorney to Third Party*

[¶ 16] This case requires us to examine the current state of the law and determine whether there are any circumstances in which an attorney owes a duty to a nonclient. Over 120 years ago, the United States Supreme Court held that absent fraud, collusion, or privity of contract, an attorney is not liable to a third party for professional malpractice. *Savings Bank v. Ward,* 100 U.S. 195, 25 L.Ed. 621, (1879). Almost eighty years later, the California Supreme Court was the first to depart from that strict contractual privity rule. In *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (1958), the court formulated the "balancing factors" test. This test is "closely related to the analysis and policy reasons used to justify permitting a third-party beneficiary to recover in a contract action." *Wilson–Cunningham v. Meyer,* 16 Kan.App.2d 197, 820 P.2d 725, 729 (1991) (quoting *Pizel v. Zuspann,* 247 Kan.

54, 795 P.2d 42 (1990)). California's balancing test requires the weighing of specific public policy considerations and closely mirrors the factors we adopted in *Gates v. Richardson*, 719 P.2d 193 (Wyo.1986), to be utilized in considering whether new tort duties should be recognized.[4] The *Biakanja* court held a duty to a nonclient could be found upon a balancing of the following six factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *Biakanja*, 320 P.2d at 19.

[¶ 17] The California court tailored its balancing test three years later in *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961) by replacing the moral blame element with an inquiry into whether expansion of liability to the nonclient would place an undue burden on the legal profession. *Id.* 15 Cal.Rptr. 821, 364 P.2d at 688. The *Lucas* plaintiffs were beneficiaries under a will and brought an action against the attorney who prepared it. As a result of a drafting error, plaintiffs received a smaller share of the estate than the testator intended. The court held the lack of privity between plaintiffs and the attorney did not preclude the intended beneficiaries, who lost their testamentary rights because of an attorney's failure to properly prepare the will, from recovering as third-party beneficiaries. Since *Lucas*, courts all over the country have applied the six factors to determine whether the circumstances warrant finding an attorney owes a duty to a nonclient.

[¶ 18] However, the *Lucas* balancing test is not the only test utilized for determining attorney liability to nonclients. Some courts rely upon a third party beneficiary contract theory similar to that set forth in the *Restatement (Second) of Contracts* § 302

(1981). Jurisdictions adopting this approach include Illinois, Maryland, Oregon, and Pennsylvania. (*Pelham v. Griesheimer*, 93 Ill. App.3d 751, 49 Ill.Dec. 192, 417 N.E.2d 882 (1981) *aff'd*, 92 Ill.2d 13, 64 Ill.Dec. 544, 440 N.E.2d 96 (1982); *Goerlich v. Courtney Industries, Inc.*, 84 Md.App. 660, 581 A.2d 825 (Ct.Spec.App.1990); *Hale v. Groce*, 304 Or. 281, 744 P.2d 1289 (1987); *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983)).

[¶ 19] Under the third party beneficiary analysis, the inquiry is whether the client's intent to benefit the nonclient was the direct purpose of the attorney-client relationship. *Flaherty v. Weinberg*, 303 Md. 116, 492 A.2d 618, 625 (1985). The duty does not extend to those incidentally deriving an indirect benefit. *Id.* at 625–26. Neither does it extend to those in an adversarial relationship with the client. The third party beneficiary test requires the plaintiff to prove clearly that (1) the client intended to benefit the plaintiff by entering into a contract with the attorney, (2) the attorney breached his contract with the client by failing to perform under its terms, and (3) giving the plaintiff the right to stand "in the client's shoes" would be appropriate to give effect to the intent of the contract. *Guy*, 459 A.2d at 750–752.

[¶ 20] Interestingly, commentators have suggested that even in those jurisdictions that apply California's balancing approach, the predominant inquiry is generally whether a principal purpose of the attorney's retention to provide legal services was to provide a specific benefit to the plaintiff—in other words, the third party beneficiary test. R. Mallen & V. Levit, *Legal Malpractice* § 81, at 161 (2nd ed.1981).

[¶ 21] For example, an Illinois court concluded that the balancing test might be appropriate in some situations, but required the divorced client's children to prove that the attorney-client contract to obtain the divorce was entered into primarily for their benefit. *Pelham* 49 Ill.Dec. 192, 417 N.E.2d at 886.

---

4. The *Gates v. Richardson* factors are as follows: (1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

The Maryland court has gone even further in its adoption of the third party beneficiary test and added an additional requirement that the interests of the third party be identical to the interests of the client. *Goerlich*, 581 A.2d at 827. Arizona clarifies the third party beneficiary test and requires plaintiffs to prove negligence by the attorney toward the client, not just a deleterious effect upon the beneficiary due to the attorney's negligence. *Franko v. Mitchell*, 158 Ariz. 391, 762 P.2d 1345 (Ct.App.1988).

[¶ 22] Only New York, Texas, Ohio and Nebraska continue to hold there is no recovery for nonclients. *See, for example, Conti v. Polizzotto*, 243 A.D.2d 672, 663 N.Y.S.2d 293 (N.Y.App.Div.1997); *Barcelo v. Elliott*, 923 S.W.2d 575 (Tex.1996); *Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636 (1987); and *St. Mary's Church of Schuyler v. Tomek*, 212 Neb. 728, 325 N.W.2d 164 (1982). Weighing whether to adopt such a duty, the South Dakota court explained the disinclination to allow a nonclient to sue an attorney for malpractice:

> There are several reasons courts are reluctant to relax the rule of privity in attorney malpractice cases. First, the rule preserves an attorney's duty of loyalty to and effective advocacy for the client. *Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636, 638 (Ohio 1987). Second, adding responsibilities to nonclients creates the danger of conflicting duties. John H. Bauman, *A Sense of Duty: Regulation of Lawyer Responsibility to Third Parties by the Tort System*, 37 S Tex L Rev 995, 1006 (1996). Third, once the privity rule is relaxed, the number of persons a lawyer might be accountable to could be limitless. *Nat'l Savings Bank v. Ward*, 100 U.S. 195, 198, 25 L.Ed. 621, 624 (1879). Fourth, a relaxation of the strict privity rule would imperil attorney-client confidentiality. *Noble v. Bruce*, 349 Md. 730, 709 A.2d 1264, 1278 (Md.Ct.App.1998).

*Chem–Age Industries, Inc. v. Glover*, 2002 SD 122, ¶ 31, 652 N.W.2d 756, ¶ 31 (S.D. 2002).

[¶ 23] Courts that have refrained from adopting a duty to a nonclient are quickly becoming part of a thinning minority and some would say are being overprotective of the legal profession. As one commentator explains:

> The modern trend in the United States is to recognize the existence of a duty beyond the confines of those in privity and the attorney/client contract. Whatever the legal theory, however, there must be a duty of care owed by the attorney to the plaintiff . . . A duty exists under two principal theories. The first approach is the multi-criteria balancing test, which originated in California. Another approach is the concept of a third-party beneficiary contract.

Mallen, *supra*, at 693–94.

[¶ 24] In Wyoming, we have not yet been presented with the precise question of whether there are any circumstances in which an attorney owes a duty to a nonclient. We have held that an attorney/client relationship is the essential element for the maintenance of a legal malpractice lawsuit. In *Bowen v. Smith*, 838 P.2d 186, 198 (Wyo.1992) we held attorneys for a corporation and its majority shareholder who undertook litigation to recover money for the corporation did not represent the minority shareholders, who were separately represented, and owed no duty to them. Also in *Brooks v. Zebre*, 792 P.2d 196, 201 (Wyo.1990), this Court found no duty existed to a nonclient and distinguished the facts in that case from those in cases which followed the "[California] balancing rule because the facts in those instances assume a third-party beneficiary whom the client clearly intended to favor by employing the services of the attorney." *Id.* at 201. The dispute in *Brooks* centered on the lease of a ranch that included an option to purchase. *Id.* at 198. This Court held that where the lessor's interests were adverse to the lessees', "it is fundamental" that the attorney for the latter could not have assumed a duty to the former. · While we recognized that some courts have elected to impose a duty to a nonclient in limited circumstances, we held no cause of action for negligence exists against an attorney for an adversary. *Id.* Thus, *Brooks v. Zebre* was not the appropriate circumstance for this Court to adopt a duty to a nonclient.

[¶ 25] *Bevan v. Fix,* 2002 WY 43, ¶ 47, 42 P.3d 1013, ¶ 47 (Wyo.2002) is this Court's most recent iteration of the question of an attorney's duty. However, the question in *Bevan* was whether an attorney owed a duty to a *former client* rather than a *nonclient*. In *Bevan,* we said that whether a legal duty exists is a question of law, and absent a duty, there is no liability. *Id.,* ¶ 47.

[¶ 26] While this Court has not been presented with circumstances which warranted finding attorneys owe any duty to third parties, we have recognized other professionals may owe such duties. *See Sundown, Inc., v. Pearson Real Estate Co.,* 8 P.3d 324 (Wyo. 2000); *Fowler v. Westair Enterprises, Inc.,* 906 P.2d 1053 (Wyo.1995); *Rauh v. Kornkven,* 852 P.2d 328 (Wyo.1993) (duty of real estate agents to nonclient buyers); *Century Ready–Mix Co. v. Campbell County School District,* 816 P.2d 795 (Wyo.1991) (identifying a recognized duty of architects to nonclients). In *Erpelding v. Lisek,* 2003 WY 80, 71 P.3d 754 (Wyo.2003), this Court utilized the duty analysis from *Gates v. Richardson* to determine whether a counselor, who was hired by an employer to evaluate an employee, owed a duty to the employee. *Erpelding,* ¶ 18, (quoting *Gates v. Richardson,* 719 P.2d 193, 196 (Wyo.1986), quoting *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342, (1976)). While we found the counselor owed no duty to the employee under the facts of that case, we did note that, under some circumstances, such a duty could exist. *Erpelding,* ¶ 18.

[¶ 27] This case presents the first opportunity we have had to address the question of an attorney's duty to a third party whom, it is alleged, was intended to benefit from the attorney's retention. Given the obvious trend around the country and this Court's willingness to hold other professionals liable to nonclients in appropriate circumstances, we conclude it is time to apply the law equally to attorneys and recognize they can also be found to owe a duty to nonclients in limited circumstances. We see no reason why attorneys deserve absolute immunity when their clients intend their services to directly benefit a nonclient. "The law of professional malpractice should be uniform, unless it can reasonably be shown that one profession is more deserving of protection than another for valid policy or social reasons." Steven K. Ward, *Developments in Legal Malpractice Liability,* 31 S. Tex. L.Rev. 121, 142–43 (1990).

[¶ 28] We find the California balancing test adopted in *Lucas v. Hamm* an appropriate approach to take with regard to this issue. As noted above, that test is similar to the test we adopted in *Gates v. Richardson,* albeit more narrowly tailored to fit its objective of determining an attorney's duty to a nonclient. The public policy considerations of the balancing test appropriately require attorneys to exercise their position of trust and superior knowledge responsibly so as not to adversely affect persons whose rights and interests are certain and foreseeable. *Heyer v. Flaig,* 70 Cal.2d 223 at 228–229, 74 Cal. Rptr. 225, 449 P.2d 161 (1969).

[¶ 29] This Court elects to further tailor the *Lucas* test by emphasizing the first factor, the extent to which the transaction was intended to *directly benefit* the plaintiff. Thus, the threshold inquiry must be whether the plaintiff is an intended beneficiary of the transaction; if not, no further inquiry need be made. *Strait v. Kennedy,* 103 Wash.App. 626, 13 P.3d 671 (2000). We align with the Washington court, which stated:

> Put another way, if the plaintiff was not an intended beneficiary of the transaction, the plaintiff lacks standing to sue the attorney for legal malpractice. *Leipham v. Adams,* 77 Wash.App. 827, 832, 894 P.2d 576 (1995) (citing *Trask,* 123 Wash.2d at 842–43, 872 P.2d 1080). An "intended beneficiary" of the transaction under *Trask* means just that—the transaction must have been intended to benefit the plaintiff; it is not enough that the plaintiff may be an incidental beneficiary of the transaction. See *Trask,* 123 Wash.2d at 845, 872 P.2d 1080.

*Id.* at 674.

[¶ 30] Whether a limited duty to a nonclient exists must be assessed on a case-by-case basis utilizing the following factors: (1) the extent to which the transaction was intended to directly benefit the plaintiff; (2)

the foreseeability of harm; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) whether expansion of liability to the nonclient would place an undue burden on the legal profession; and (6) the policy of preventing future harm.

 [¶ 31] While the answer to the threshold question of intent does not totally resolve the issue, no further inquiry need be made unless such intent exists. *Trask v. Butler*, 123 Wash.2d 835, 872 P.2d 1080 (1994). If the intent to benefit a third party is found, the multi-factor balancing test then requires specific public policy considerations *before* finding a duty to a third party. *Id.* at 1089 (quoting 1 R. Mallen & J. Smith, *Legal Malpractice*, § 7.9 (3d ed.1989)). The policy considerations against finding a duty to a nonclient are the strongest where doing so would detract from the attorney's ethical obligations to the client. Mallen, *supra*, at 709. This occurs if a duty to a third person creates a material risk of divided loyalties because of a conflicting interest or of a breach of a confidence. The potential for a conflict of interest is encompassed in the fifth policy consideration, whether expansion of liability to the nonclient would place an undue burden on the legal profession. A Massachusetts court stated:

> While an attorney may be found to owe a duty to a nonclient whom the attorney knows will rely on the services rendered to his or her client, *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 524, 536 N.E.2d 344, cert. denied, 493 U.S. 894, 110 S.Ct. 242, 107 L.Ed.2d 192 (1989), we "will not impose a duty of reasonable care on an attorney [to a nonclient] if such an independent duty would potentially conflict with the duty the attorney owes to his or her client." *Lamare v. Basbanes*, 418 Mass. 274, 276, 636 N.E.2d 218 (1994).

*Bratcher v. Moriarty, Donoghue & Leja, P.C.*, 54 Mass.App.Ct. 111, 763 N.E.2d 556, 560 (2002).

 [¶ 32] Like Massachusetts, this Court will not impose a duty on an attorney to a nonclient if such an independent duty would potentially conflict with the duty the attorney owes to his or her client. An attorney owes no actionable duty to an adverse party emanating from the zealous representation of his own client. *Brooks*, 792 P.2d at 201. Such duty of care to a person whose relationship is adverse to the client is inappropriate. Mallen, *supra*, at 711.

[¶ 33] We now turn to the facts of this case. The primary question is whether Mr. Drwenski specifically intended to benefit Ms. Connely when he retained Mr. McColloch to obtain his divorce. After a careful review of the record which contains the fruits of a complete discovery process, we can find no evidence that Mr. Drwenski intended to benefit anyone other than himself when he retained Mr. McColloch to obtain his divorce. Rather, the record only establishes that Mr. Drwenski filed for divorce and wanted his marriage to Mrs. Drwenski dissolved, for whatever reason. We believe it is pivotal that Ms. Connely was not even a beneficiary of the estate at the time Mr. Drwenski initiated the divorce proceedings. We are also persuaded that had he wanted a quick divorce to avoid his wife's inheritance rights under the statute, thereby leaving more for Ms. Connely, he would not have refused to settle the divorce in September 1999. For a duty to exist, the transaction must have been intended to benefit the plaintiff; it is not enough that the plaintiff may be an "incidental beneficiary" of the transaction. *Strait*, 13 P.3d at 674.

[¶ 34] While we recognize that a divorce client's children will be affected by the divorce, that fact alone is not sufficient to support a finding that the attorney hired to obtain the divorce owes a duty to the children of the client. Other jurisdictions that have considered whether an attorney representing one party in a divorce owes any duty to the client's children have held that the attorney does not owe such a duty. In *Strait*, the decedent hired an attorney to represent her in her divorce. *Id.* at 672. However, her divorce was delayed over two years and not finalized before she died unexpectedly in an automobile accident. Since she was still married at the time of her death, her husband was entitled to his intestate share of the decedent's estate, thereby

reducing the daughters' portions of the estate. The court applied the modified balancing factors test and concluded the daughters were not the intended beneficiaries of the divorce. The Washington court, in reaching its decision, quoted another jurisdiction which considered the same question. The court said:

> In *Wilson–Cunningham*, the Kansas Court of Appeals considered a claim very similar to the one at bar. There, attorney Meyer represented Charles Wilson in a dissolution action. A hearing was held and the parties testified that although they had nearly reached a property settlement agreement, they had not yet agreed on the division of certain items. The parties also testified that they thought they could resolve their remaining issues but if they could not they would present the issues to the trial court for resolution. The court granted the dissolution, approved the parties stipulations as to property division, maintenance, child custody and support, and provided that if the parties could not reach agreement as to the remaining issues the court would order a division at a later date. A few weeks later, the parties agreed on the final disposition and both the parties signed the final decree. The decree was ready to be filed on November 23, 1987. At 12:16 a.m. on December 4, 1987, Charles Wilson died intestate. The decree was filed at 9 a.m. on December 4, 1987. The divorce decree was ineffective to terminate the marriage because the decree was filed after Mr. Wilson's death.
>
> Charles' children from a former marriage sued Meyer claiming that they received a smaller share of their father's estate because, due to the untimely filing of the divorce decree, his wife received a spousal share of his estate by intestate succession. The children alleged tort and contract claims against Meyer, claiming that he owed them a duty as intended beneficiaries of the representation and, alternatively, as third-party beneficiaries on the contract between Charles and Meyer.
>
> The Kansas Court of Appeals rejected the argument that the children were intended beneficiaries of the attorney-client relationship. The court applied the multi-factor analysis utilized by the California and Kansas courts (in which the first factor is the extent to which the transaction was intended to affect the plaintiff) and concluded that the purpose of the dissolution "was not to represent whatever future interests the plaintiffs might have had in Charles' estate." Rather, the court found that the purpose of a dissolution is to "sever a marital relationship, determine the respective rights to marital property, and provide for spousal maintenance and the support and custody of any minor children of the marriage." The court found no indication in the record that Charles intended to use his divorce as an estate planning device ... At most, Charles' children were only incidental beneficiaries of the contract, and "an incidental beneficiary cannot enforce the contract for his or her benefit."

*Id.* at 674–675 (citations omitted).

[¶ 35] Likewise, the Washington court in *Strait* found no indication in the record that the decedent intended her marital dissolution action to serve as an estate-planning device. Ms. Connely contends the *Strait* case is distinguishable from the present case because Mr. Drwenski intended to benefit Ms. Connely. However, she presented no evidence of that fact. The only evidence Ms. Connely produced regarding Mr. Drwenski's intent is language from his will that he would leave Mrs. Drwenski "nothing" in the event they were divorced at the time of his death. For two fundamental reasons, that fact fails to prove anything with regard to his intent to benefit Ms. Connely when he retained his divorce attorney. First, Ms. Connely was not a beneficiary of his will at the time he retained Mr. McColloch. Second, unmistakably, Mr. Drwenski realized his death was a possibility before the divorce was final. His will specifically addressed that eventuality by leaving Mrs. Drwenski "one-fourth of the property which will be subject to disposition under this will." That fact does not represent evidence of his intent to benefit Ms. Connely through his divorce. On the contrary, it simply demonstrates he was aware of the ramifications of not obtaining the divorce before his death.

[¶ 36] Ms. Connely claims that Mr. Drwenski's intent to finalize the divorce quickly, and thereby leave her a larger inheritance, can be inferred from the fact that he was ill when he filed for divorce. And yet, it is undisputed that Mr. Drwenski had the opportunity to settle the divorce and make it final three months before his death, yet he chose not to do so. Under these circumstances, we hold a jury could not reasonably infer Ms. Connely was the intended beneficiary of the divorce. While questions relating to the parties' intent are usually factual, precluding summary judgment, where the parties' intent is clear such that reasonable minds could not differ, summary judgment is appropriate. *Cordero Mining Co.*, ¶ 10; *see also, Examination Management Services, Inc.*, ¶ 10; *Detroit Institute of Arts Founders Society*, 127 F.Supp.2d at 124.

[¶ 37] We separate the formal and pretended from the genuine and substantial so only the latter may be considered in eliminating the burden of a formal trial if only questions of law are left to decide; there must be no issue of material fact to decide. *Ahrenholtz v. Laramie Economic Development Corp.*, 2003 WY 149, ¶ 16, 79 P.3d 511, ¶ 16.

> Guesswork cannot be substituted for evidence or inference; and an inference cannot be based upon a mere possibility or probability; it can only be based upon a fact proved, or something known to be true. In more recent times we have had occasion to say no inference can be based on mere surmise, guess, speculation or probability. *Tower v. Horn*, Wyo., 400 P.2d 146, 147. Also, conjecture, speculation as to happenings, or the suggestion of a possibility cannot be made to take the place of evidence. *Edwards v. Harris*, Wyo., 397 P.2d 87, 91; *Caillier v. City of Newcastle*, Wyo., 423 P.2d 653, 656.

*O'Brien v. Hunt*, 464 P.2d 306 (Wyo.1970).

[¶ 38] Ms. Connely's position requires the threading together of weak inferences amounting to guesswork. No evidence exists in the record for this Court to alter the district court's holding that the attorney owed no duty to Ms. Connely under the circumstances of this case. Because the threshold question of our new balancing test is not met, we need not discuss the remaining factors.

[¶ 39] We affirm the district court's grant of Mr. McColloch's motion for summary judgment against Ms. Connely, but do so on the merits of our new test. This Court will affirm the district court's action on appeal if it is sustainable on any legal ground appearing in the record even if the legal ground or theory articulated by the district court is incorrect. *Heilig v. Wyoming Game and Fish Commission*, 2003 WY 27, ¶ 8, 64 P.3d 734, ¶ 8 (Wyo.2003).

### Did the Estate have a Cause of Action Under the Survival Statute?

[¶ 40] The appellant's second issue is whether Ms. Connely, as personal representative of the estate, could pursue the attorney malpractice case under the Wyoming survival statute on behalf of the estate. The district court held, "The Estate was not damaged. The alleged failure to obtain the divorce did not reduce the estate assets." We agree with the district court on this issue for two reasons: (1) because no claim could have existed on behalf of the estate while Mr. Drwenski was still alive, and, therefore, none survived, and (2) because the estate suffered no damages.

[¶ 41] Wyoming's survival statute clearly states:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, injuries to the person, an injury to real or personal estate, or any deceit or fraud also survive. An action may be brought notwithstanding the death of the person entitled or liable to the same, but in actions for personal injury damages, if the person entitled thereto dies recovery is limited to damages for wrongful death.

Wyo. Stat. Ann., § 1–4–101 (LexisNexis 2003). The statutory language is clear that a cause of action must arise before death to survive after death. Survive, according to Black's Dictionary, means "to continue to live or exist beyond the life, or existence of; to live through; to live on after passing through; to remain alive." *Black's Law Dic-*

tionary, 1297 (5th ed.1979). Thus, the survival statute cannot apply to harm allegedly done to an estate *after* death. Ms. Connely cites to two cases "approving the concept that an attorney malpractice action arising during the life of the deceased survives in the estate." *See Nevin v. Union Trust Co.,* 726 A.2d 694 (Maine 1999) and *Beastall v. Madson,* 235 Ill.App.3d 95, 175 Ill.Dec. 865, 600 N.E.2d 1323 (1992). Those cases, however, are not pertinent here because the alleged malpractice is that Mr. McColloch did not finalize the divorce for Mr. Drwenski before he died. Mr. Drwenski's death triggered the alleged malpractice. A cause of action, therefore, could not survive Mr. Drwenski's death because to do so, the cause of action would have had to occur during Mr. Drwenski's life. A survival statute does not create a cause of action, but "merely permits a representative of the decedent to maintain those statutory or common law actions which have already accrued to the decedent *before* he or she died." *Bryant v. Kroger Co.,* 212 Ill.App.3d 335, 156 Ill.Dec. 487, 570 N.E.2d 1209, 1210 (1991) (emphasis added).

[¶ 42] The estate's claim also fails because it suffered no damages. While Ms. Connely relies on *Granquist v. Sandberg,* 219 Cal.App.3d 181, 268 Cal.Rptr. 109 (1990) to support the estate's claim of damage, that case is distinguishable from the present facts. In *Granquist,* the attorney represented the plaintiff in a personal injury case. Since the case was not tried before the client's death, his estate could not recover damages for his pain, suffering and disfigurement under California law. The attorney's failure to expedite the case reduced the assets of the estate, giving the estate a cause of action.

[¶ 43] This estate suffered no such loss. Had Mr. Drwenski's divorce been final at the time of his death, the estate's assets would have been identical. The estate has no interest in how its assets are distributed; stated another way, the estate has no damages. *See Bevan,* ¶¶ 62, 63. We affirm the district court's grant of summary judgment as to claims on behalf of the estate.