# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 95

### OCTOBER TERM, A.D. 2023

October 3, 2023

TARAN MICHAEL SCHLEGEL,

Appellant
(Plaintiff),

v.

BARNEY & GRAHAM, LLC, a
Wyoming limited liability company and
SHELBY NOEL HUGHES,

Appellees
(Defendants).

S-22-0293

*Appeal from the District Court of Sheridan County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
Lucas E. Buckley, Sean M. Larson, Kari Hartman, Hathaway & Kunz LLP, Cheyenne, Wyoming. Argument by Mr. Larson.

*Representing Appellees:*
Scott E. Ortiz, Erica R. Day, Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument by Mr. Ortiz and Ms. Day.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, JJ, and ROBINSON, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**ROBINSON, S., District Judge.**

[¶1]    Michael Lee Schlegel (Michael) and Charlene Ann Schlegel (Charlene) were in the process of divorcing when Michael died of a heart attack without a known will.[1]  Under the intestacy statute, Charlene inherited portions of Michael's estate that she would not have, had the divorce been finalized prior to Michael's death.  Taran Michael Schlegel (Taran), Michael's only living child, filed a legal malpractice suit against his father's attorney, Shelby Noel Hughes, and her law firm, Barney & Graham, LLC, for failing to timely resolve Michael's divorce.  The district court granted Ms. Hughes and Barney & Graham, LLC's motion for summary judgment.  It found no evidence was presented that Taran was an intended beneficiary of his father's attorney's services, and thus no duty was owed to Taran.  We affirm.

## ISSUE

> Did the district court err when it found no evidence was presented indicating Taran, a non-client, was an intended beneficiary of legal services provided by Ms. Hughes and Barney & Graham, LLC?

## FACTS

[¶2]    Michael and Charlene married three times and divorced two times between 1999 and 2017.  They separated for the third time in June 2018, after having remarried a year earlier.  Michael had two sons, Taran and Kalen, from a different relationship.  Kalen predeceased Michael, but had two children, still minors at the time of Michael's death.  There was no love lost between Taran and his stepmother, Charlene.  Taran encouraged Michael on multiple occasions to divorce Charlene.

[¶3]    Michael met with Ms. Hughes, an associate attorney for Barney & Graham, LLC, for divorce representation in the Spring of 2019.  Sometime prior to this meeting, Michael had a stroke and thereafter his speech was difficult to understand.  Michael's sister, Punky Bradley, attended Michael's first meeting with Ms. Hughes to assist with communication.  Ms. Hughes was informed in this meeting that Michael had one living son, and Ms. Bradley, as well as other members of Michael's family, did not like Charlene and believed she had absconded with Michael's money.

[¶4]    Michael hired Ms. Hughes to represent him for his third divorce from Charlene.  Ms. Hughes filed a complaint for divorce on Michael's behalf on April 2, 2019.  Charlene failed to answer, and default was entered against her.  A default hearing was scheduled to be held on June 20, 2019.  Charlene appeared pro se; the district court continued the hearing to allow Charlene to seek the assistance of counsel.

---

[1] Because the family members have the same last name, we refer to them by their first name for clarity.

[¶5]     The default hearing was rescheduled for September 19, 2019.  On that date, Charlene again appeared without counsel.  Ms. Hughes told the district court Michael wanted to complete the divorce but there were unresolved personal property issues – specifically the parties' vehicles.  The district court stated if Ms. Hughes would send a proposed decree of divorce that divided all property except the vehicles, the court would enter a divorce decree, and the vehicles could be addressed in a separate hearing if necessary.  The district court further stated to Ms. Hughes, "So get me the decree … get your client divorced."

[¶6]     Following this hearing, Ms. Hughes did not immediately provide a proposed divorce decree to the district court.  Instead, Ms. Hughes attempted to have Michael complete his initial disclosures so that all property could be distributed in the divorce decree.  Michael did not return the initial disclosures to Ms. Hughes, although he did inform her he was "working on" them.  Ms. Hughes made a settlement offer to Charlene, to which she received no response.  On January 15, 2020, following the court's judicial assistant inquiring about the matter, Ms. Hughes requested a hearing to resolve the vehicle distribution.  A hearing was scheduled for March 26, 2020.

[¶7]     On February 23, 2020, Michael died of a heart attack, with no known will.[2]  Despite physical ailments due to Michael's stroke, his death was unexpected.

[¶8]     The day after Michael's death, Charlene filed a motion to dismiss the divorce complaint.  Ms. Hughes provided a proposed divorce decree to the district court; her firm argued the district court had granted a divorce at the September 19, 2019, hearing and bifurcated the proceedings.[3]  Ultimately, the district court dismissed the divorce complaint with prejudice.

---

[2] Taran believed Michael intended for Taran to inherit Michael's entire estate.  He also believed a will existed, but his attempts to locate it were unsuccessful.

[3] Taran argued in the district court the statements made by the court at the September 19, 2019, default hearing were an indication the court intended to grant a bifurcated divorce.  Wyoming recognizes bifurcated divorce proceedings, although granting bifurcation is a matter of judicial discretion.  *See Ransom v. Ransom*, 2017 WY 132, ¶¶ 25–31, 404 P.3d 1187, 1193–94 (Wyo. 2017); *Kelly v. Kilts*, 2010 WY 151, ¶ 21, 243 P.3d 947, 952 (Wyo. 2010).  In *Kelly,* the plaintiff was in critical condition in a hospital and requesting an immediate divorce from the defendant, her husband, so he could not make health care decisions for her or inherit her share of the marital property.  *Id.,* ¶¶ 1–4, 243 P.3d at 948–49.  In affirming the district court's grant of an immediate divorce, while reserving the issue of property division for a later date, we explained:

> Wyoming does not have a statutory provision expressly authorizing courts
> to grant a divorce in one proceeding and determine an equitable division
> of the marital property in a subsequent proceeding. However, the trial of
> issues separately is well accepted, such as in criminal cases where guilt

[¶9]    Had the divorce been completed prior to Michael's death, Taran would have inherited fifty percent (50%) of Michael's estate under the intestacy statute, Wyo. Stat. Ann. § 2-4-101 (LexisNexis 2023).[4]  Because the divorce was not completed prior to Michael's death, Charlene inherited fifty percent (50%) of Michael's estate, Taran inherited twenty-five percent (25%), and Kalen's two children inherited the remaining twenty-five percent (25%) in equal shares[5].  Taran argues this difference resulted in Charlene receiving approximately $500,000.00; had the divorce been finalized prior to Michael's death she would have only been entitled to make a claim against the estate for a vehicle worth a few thousand dollars.

[¶10]  Taran filed a complaint against Ms. Hughes and Barney & Graham, LLC for legal malpractice.  The complaint alleged Ms. Hughes' negligent delay in presenting a divorce decree to the district court following the September 19, 2019, default hearing led to a diminishment of his inheritance.  Ms. Hughes and Barney & Graham, LLC filed a motion for summary judgment, arguing they did not owe Taran, a non-client, a duty of care.  The district court granted the motion and concluded:

> In certain circumstances, an attorney owes a duty to a non-client.  The threshold inquiry is whether [Taran] is an intended beneficiary of the attorney's services.  The Court

---

and punishment are determined separately or personal injury cases where liability and damages may be separately tried. Additionally, W.R.C.P. 56(c) and (d) expressly contemplate the rendering of judgment as a matter of law on some issues and a later trial on any remaining factual issues.

*Id.*, ¶ 21, 243 P.3d at 952.

[4] Section 2-4-101(a) states:

(a) Whenever any person having title to any real or personal property having the nature or legal character of real estate or personal estate undisposed of, and not otherwise limited by marriage settlement, dies intestate, the estate shall descend and be distributed in parcenary to his kindred, male and female, subject to the payment of his debts, in the following course and manner:
(i) If the intestate leaves husband or wife and children, or the descendents of any children surviving, one-half (1/2) of the estate shall descend to the surviving husband or wife, and the residue thereof to the surviving children and descendents of children, as hereinafter limited;
(ii) If the intestate leaves husband or wife and no child nor descendents of any child, then the real and personal estate of the intestate shall descend and vest in the surviving husband or wife.

[5] At the time of the summary judgment proceedings, the estate action had not been completed.  The estate action was completed shortly before Taran's brief was filed on appeal.

cannot identify any facts on the record indicating that [Michael] sought his divorce with the intention of enlarging his son's inheritance. Therefore, [Taran] lacks standing to pursue legal malpractice claims against his father's attorneys as a matter of law.

[¶11]  Taran appeals.

## STANDARD OF REVIEW

[¶12]  Rule 56 of the Wyoming Rules of Civil Procedure provides standards for summary judgment motions. A motion should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." W.R.C.P. 56(a).

> A genuine issue of material fact exists when a disputed fact, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. The party moving for summary judgment bears the initial burden of establishing a prima facie case for a summary judgment. If the movant carries this burden, the party opposing the summary judgment must come forward with specific facts to demonstrate that a genuine issue of material fact does exist.

*Bidache, Inc. v. Martin*, 899 P.2d 872, 874 (Wyo. 1995) (quoting *Thunder Hawk By and Through Jensen v. Union Pac. R.R. Co.*, 844 P.2d 1045, 1047 (Wyo. 1992)).

[¶13]  Our standard of review for summary judgment is firmly established. "We accord no deference to the district court's decisions on issues of law." *Kahrs v. Bd. of Trs. for Platte Cnty. Sch. Dist. No. 1*, 901 P.2d 404, 406 (Wyo. 1995) (citing *Halpern v. Wheeldon*, 890 P.2d 562, 564 (Wyo. 1995)). In reviewing a district court's decision on summary judgment, we review the motion as if it had been presented to us originally. *Creel v. L&L, Inc.*, 2012 WY 124, ¶ 3, 287 P.3d 729, 730 (Wyo. 2012) (citing *Bangs v. Schroth*, 2009 WY 20, ¶ 20, 201 P.3d 442, 452 (Wyo. 2009)). We review the record and materials received by the district court and give the party opposing the motion all favorable inferences and benefits that may be fairly drawn from the materials. *Id.*

[¶14]  In negligence cases, summary judgment is not favored, and the standard of review requires further scrutiny. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 12, 126 P.3d 886, 889 (Wyo. 2006). "This rule is particularly true in malpractice actions. The mixed questions of law and fact usually involved in a negligence action concerning the existence

4

of a duty, the standard of care and proximate cause are ordinarily not susceptible to summary adjudication." *Rino v. Mead*, 2002 WY 144, ¶ 13, 55 P.3d 13, 18 (Wyo. 2002) (internal quotation marks and citations omitted). Determining whether a duty has been violated is generally a question of fact for the fact finder. *Id.* However, whether a duty exists is "a question of law, 'making an absence of duty the surest route to summary judgment in negligence actions.'" *Id.* (quoting *Schuler v. Cmty. First Nat'l Bank*, 999 P.2d 1303, 1306 (Wyo. 2000)) (other citations omitted). Issues of a party's intent are typically a question for the fact finder, making summary judgment improper. *In re Estate of Drwenski*, 2004 WY 5, ¶ 14, 83 P.3d 457, 461 (Wyo. 2004). If "reasonable minds could not differ" as to the party's intent, however, summary judgment may be appropriate. *Id.*

## DISCUSSION

[¶15] Whether Ms. Hughes and Barney & Graham, LLC owed a duty to Taran, a non-client, is a mixed question of fact and law. Almost two decades ago, in *Drwenski*, we analyzed whether an attorney owes a non-client a duty when the death of a divorce litigant occurred prior to the completion of the divorce.

[¶16] Both parties find *Drwenski* to be germane in this matter; we find it to be controlling. Vernon Drwenski died while his divorce was pending, resulting in his wife, Trudi Drwenski, inheriting more of his estate than she would have, had the divorce been finalized prior to his death. *Id.,* ¶ 1, 83 P.3d at 459. Mr. Drwenski had hired an attorney to represent him and filed a divorce complaint. *Id.,* ¶ 5, 83 P.3d at 460. At the time his divorce complaint was filed, Mr. Drwenski was terminally ill with cirrhosis of the liver and "was trying to get his life in order." *Id.* His intended first step in doing so was to divorce Mrs. Drwenski. *Id.*

[¶17] After the divorce complaint was filed, Mr. Drwenski had a falling out with one of his daughters and disinherited her by changing his will and "leaving the bulk of his estate to another daughter [Erin] Connelly." *Id.,* ¶ 6, 83 P.3d at 460. His new will recognized the divorce proceedings and "that Mrs. Drwenski would be entitled to twenty-five percent of his estate under Wyoming's elective share statute in the event his divorce was not final at the time of his death." *Id.* Despite offers of settlement, the divorce litigants were unable to resolve the divorce prior to Mr. Drwenski's death. *Id.,* ¶ 7, 83 P.3d at 460. Mrs. Drwenski was thus entitled to twenty-five percent (25%) of Mr. Drwenski's estate pursuant to Wyo. Stat. Ann. § 2-5-101(a)(ii) (LexisNexis 2003).[6] *Id.,* ¶ 8, 83 P.3d at 460.

---

[6] Section 2-5-101 is Wyoming's elective share statute and states, in part:

> (a) If a married person domiciled in this state shall by will deprive the surviving spouse of more than the elective share, as hereafter set forth, of the property which is subject to disposition under the will, reduced by funeral and administration expenses, homestead allowance, family

[¶18]  Ms. Connelly sued Mr. Drwenski's divorce attorney for failing to timely obtain a divorce for Mr. Drwenski prior to his death.  *Id.,* ¶ 9, 83 P.3d at 460.  The district court granted partial summary judgment against Ms. Connelly, holding the attorney did not owe a duty to a non-client under the circumstances.  *Id.,* ¶ 10, 83 P.3d at 460.

[¶19]  After a thorough examination of the state of the law in other jurisdictions, we found the question of "whether there are any circumstances in which an attorney owes a duty to a nonclient" in Wyoming to be a matter of first impression.  *Id.,* ¶ 24, 83 P.3d at 463.  We then explained:

> [W]e conclude it is time to apply the law equally to attorneys and recognize they can also be found to owe a duty to nonclients in limited circumstances. We see no reason why attorneys deserve absolute immunity when their clients intend their services to directly benefit a nonclient. "The law of professional malpractice should be uniform, unless it can reasonably be shown that one profession is more deserving of protection than another for valid policy or social reasons." Steven K. Ward, Developments in Legal Malpractice Liability, 31 S. Tex. L.Rev. 121, 142–43 (1990).
>
> We find the California balancing test adopted in *Lucas v. Hamm* an appropriate approach to take with regard to this issue. As noted above, that test is similar to the test we adopted in *Gates v. Richardson,* albeit more narrowly tailored to fit its objective of determining an attorney's duty to a nonclient. The public policy considerations of the balancing test appropriately require attorneys to exercise their position of trust and superior knowledge responsibly so as not to adversely affect persons whose rights and interests are certain and foreseeable. *Heyer v. Flaig*, 70 Cal.2d 223 at 228–229, 74 Cal.Rptr. 225, 449 P.2d 161 (1969).

allowances and exemption, and enforceable claims, the surviving spouse has a right of election to take an elective share of that property as follows: (i) One-half (1/2) if there are no surviving issue of the decedent, or if the surviving spouse is also a parent of any of the surviving issue of the decedent; or
(ii) One-fourth (1/4), if the surviving spouse is not the parent of any surviving issue of the decedent.

This Court elects to further tailor the *Lucas* test by emphasizing the first factor, the extent to which the transaction was intended to *directly benefit* the plaintiff. Thus, the threshold inquiry must be whether the plaintiff is an intended beneficiary of the transaction; if not, no further inquiry need be made. *Strait v. Kennedy*, 103 Wash.App. 626, 13 P.3d 671 (2000). We align with the Washington court, which stated:

> Put another way, if the plaintiff was not an intended beneficiary of the transaction, the plaintiff lacks standing to sue the attorney for legal malpractice. *Leipham v. Adams*, 77 Wash.App. 827, 832, 894 P.2d 576 (1995) (citing *Trask*, 123 Wash.2d at 842-43, 872 P.2d 1080. An "intended beneficiary" of the transaction under *Trask* means just that—the transaction must have been intended to benefit the plaintiff; it is not enough that the plaintiff may be an incidental beneficiary of the transaction. See *Trask*, 123 Wash.2d at 845, 872 P.2d 1080.

*Id.* at 674.

Whether a limited duty to a nonclient exists must be assessed on a case-by-case basis utilizing the following factors: (1) the extent to which the transaction was intended to directly benefit the plaintiff; (2) the foreseeability of harm; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) whether expansion of liability to the nonclient would place an undue burden on the legal profession; and (6) the policy of preventing future harm.

While the answer to the threshold question of intent does not totally resolve the issue, no further inquiry need be made unless such intent exists. *Trask v. Butler*, 123 Wash.2d 835, 872 P.2d 1080 (1994). …

*Id.,* ¶¶ 27-31, 83 P.3d at 464-65. We then concluded there was no evidence indicating Mr. Drwenski intended to benefit Ms. Connolly or anyone else when hiring his divorce attorney to obtain a divorce. *Id.,* ¶ 33, 83 P.3d at 465. "While we recognize that a divorce client's children will be affected by the divorce, that fact alone is not sufficient to support a finding

7

that the attorney hired to obtain the divorce owes a duty to the children of the client." *Id.,* ¶ 34, 83 P.3d at 465. We affirmed the district court's partial summary judgment in favor of the attorney as no duty was owed to Ms. Connelly. *Id.*, ¶ 39, 83 P.3d at 467.

[¶20] The question today is whether Taran was an intended beneficiary of Michael's divorce proceedings. We find he was not. To do so would require facts showing the divorce proceedings were intended to serve as an estate-planning device. There is no evidence in the record to support this.

[¶21] Taran argues he was Michael's intended beneficiary because he would have benefited had the divorce been completed prior to Michael's death through estate proceedings. However, this disregards the test we adopted in *Drwenski*. The question is whether the **transaction**, i.e., the divorce proceedings, was intended to **directly benefit** Taran. Evidence in the record only lends support to Taran being an intended beneficiary of Michael's estate. In a pretrial deposition, Taran answered the following questions:

> Q: You don't have any evidence via text message or e-mail or anything else that your father said, "I'm divorcing Charlene to financially benefit you," do you?
> A: No, not at all.
> Q: Nothing that specific was ever said by him, was it?
> A: It was probably said by him, but not in those terms, not like, "I'm specifically divorcing Charlene so that you get all the stuff." It was just like, "I don't want my legacy to be gone."
> Q: You were never asked to communicate at all with your dad's lawyers about this divorce, were you?
> A: No, not at all.

[¶22] When later asked in the same deposition what other evidence Taran had to support he was an intended beneficiary of the divorce, he stated the following:

> A: Only his friends and family saying that's the only thing I have that's not presented here today.
> Q: What friends or family are we talking?
> A: His aunts – not his aunts. His sisters, my mother, which was his friend, all of his friends that he worked with and lived with in Story.
> Q: So what have they told you that leads you to believe that you are the intended beneficiary of the divorce?
> A: That's just what he would talk about I guess when he was with him, how proud of me he was and that he would just do anything to help me.

8

Q: So the fact that he was proud of you and would do anything to help you, that's feedback you got from your friends and family?

A: Yeah. That he would just – I was the only thing he would talk about after his stroke to his people.

Q: And from hearing those nice things your dad was saying about you, you interpreted that to mean that he wanted you to be a beneficiary of this divorce?

A: I'm also his son. And I have been his son. So it would just only make sense.

[¶23] The above only supports Taran was "an incidental beneficiary" of the divorce proceedings. *Id.,* ¶ 29, 83 P.3d at 464. The record is devoid of evidence Taran was intended to directly benefit from the transaction – the divorce. This is not sufficient to withstand summary judgment. Accordingly, inquiry into the remaining factors given in *Drwenski* is unnecessary.

## CONCLUSION

[¶24] The district court properly granted summary judgment to Ms. Hughes and Barney & Graham, LLC. They owed no duty to Taran, a third-party non-client. Taran did not meet his burden of establishing a prima facie case of a genuine issue of material fact. No evidence was presented to the district court that Taran was intended to directly benefit from Michael's divorce proceedings. Taran lacked standing to file a claim of legal malpractice against Ms. Hughes and Barney & Graham, LLC.

[¶25] Affirmed.