Corrected Opinion Filed 10/02/24 by Clerk of the Supreme Court

# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

---

### 2024 ND 171

---

Sharon Ardelle Mitzel, Fred Alan Mitzel, Jr.,

and Eric Joseph Mitzel,                                       Plaintiffs and Appellants

v.

Vogel Law Firm, Ltd. and

Jerilynn Brantner Adams,                                    Defendants and Appellees

---

### No. 20230372

---

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Bobbi B. Weiler, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Bahr, Justice.

Paul A. Sortland, Minneapolis, MN, for plaintiffs and appellants.

Richard J. Thomas (argued) and Chris Angell (on brief), Arden Hills, MN, for defendants and appellees.

**Bahr, Justice.**

[¶1]   Plaintiffs Sharon Mitzel, Alan Mitzel, and Eric Mitzel appeal from a judgment dismissing their claims with prejudice after the district court granted Defendants Vogel Law Firm and Jerilynn Brantner Adams (collectively, "Vogel") partial summary judgment dismissing Alan and Eric Mitzel's claims, and at trial granted Vogel judgment as a matter of law dismissing Sharon Mitzel's remaining claims. We conclude the court did not err in granting partial summary judgment dismissing Alan and Eric Mitzel's legal malpractice claims against Vogel. We further conclude that the court did not err in determining the measure of damages and that Sharon Mitzel presented no evidence she gave up an interest in the marital property to secure Fred Mitzel's agreement to deed Section 19 to Alan and Eric Mitzel upon his death. Finally, we conclude the court erred in determining Sharon Mitzel presented no evidence she incurred attorney's fees and costs due to Vogel's alleged legal malpractice. We affirm the judgment in part and reverse in part; we remand for further proceedings consistent with this opinion.

I

[¶2]   This case arises out of alleged legal malpractice in an underlying divorce action involving the disposition of land in LaMoure County, referred to as "Section 19."

[¶3]   Fred Mitzel and Sharon Mitzel were married and had two sons together—Alan Mitzel and Eric Mitzel. In 2004, Fred Mitzel and Sharon Mitzel formed the Fred Mitzel Family LLLP ("LLLP"). In March 2005, Fred Mitzel and Sharon Mitzel executed a quit claim deed conveying their interests in a large portion of their farm, including their interests in Section 19, along with other property to the LLLP.

[¶4]   In August 2007, Fred Mitzel commenced the underlying action for divorce against Sharon Mitzel. Sharon Mitzel retained Vogel to represent her in the divorce action. In July 2009, Fred Mitzel and Sharon Mitzel entered into a partial

1

stipulation that valued and divided the parties' property. Even though neither party apparently personally owned it, the July 2009 stipulation purported to award Section 19 to Fred Mitzel "[s]ubject to deeding to boys upon death."

[¶5] In December 2009, Fred Mitzel and Sharon Mitzel entered into a Marital Termination Agreement ("MTA"). In the MTA, consistent with the partial stipulation, the parties agreed among other things to award Section 19 to Fred Mitzel "[s]ubject to restrictions on sale to anyone other than sons, Alan and Eric Mitzel; and requirement to deed to Alan and Eric Mitzel upon Fred's death." The MTA also awarded Fred Mitzel "all right, title, interest, and equity" in the LLLP. A divorce judgment, consistent with the MTA, was subsequently entered in December 2009, dissolving Fred Mitzel and Sharon Mitzel's marriage.

[¶6] In September 2018, the LLLP and Fred Mitzel commenced a quiet title action against Sharon Mitzel, Alan and Eric Mitzel, and AgCountry Farm Credit Services, FLCA ("AgCountry"), seeking an order declaring the LLLP the sole fee simple owner of Section 19, subject only to the mortgage interests held by AgCountry, and declaring the restrictions on alienation in the divorce judgment "null and void." In February 2019, the district court consolidated the quiet title action with the Mitzels' divorce action. In October 2019, the LLLP and Fred Mitzel moved for summary judgment; AgCountry also moved for summary judgment. In November 2019, represented by different counsel, Sharon Mitzel and her sons moved the district court for relief from the divorce judgment under N.D.R.Civ.P. 60(a), seeking the court to correct the "error, oversight, and omission" regarding the transfer of certain real property, and moved for contempt against Fred Mitzel.

[¶7] In April 2020, the district court entered an order in the consolidated cases. In its order, the court denied Sharon Mitzel and her sons' Rule 60(a) motion, concluding that because the MTA and divorce judgment purported to distribute property not owned by the parties to that action, the relief they requested was not fixing a typographical or clerical error, but rather a question of real estate ownership, and thus was not an "oversight or omission" the court could remedy under Rule 60(a). The court held that what Sharon Mitzel and her sons actually sought was a remedy under Rule 60(b) for relief due to "mistake, inadvertence,

surprise, or excusable neglect," but they were "time barred from such a request." In its order, the court also granted summary judgment to the LLLP and Fred Mitzel, holding Section 19 was owned in fee simple by the LLLP; and to AgCountry, finding it had a valid mortgage against the property. The court explained that "a divorce judgment that purported to distribute property that was not owned by either party to the divorce" was "a nullity," and, further, "any claim by the Mitzel sons arises out of the Divorce Judgment and for the reasons stated are a nullity." No appeal was taken from the court's final judgment.

[¶8] In September 2020, Sharon Mitzel, Alan Mitzel, and Eric Mitzel commenced this legal malpractice action against Vogel, seeking damages for alleged negligence in the divorce action and causing them to "lose" Section 19 in settling the divorce action. Before trial, the district court granted partial summary judgment to Vogel dismissing Alan and Eric Mitzel's claims holding they lacked standing as non-clients to assert legal malpractice claims against Vogel. The court denied Vogel's summary judgment motion seeking dismissal of Sharon Mitzel's claims.

[¶9] In September 2023, the district court held a trial on Sharon Mitzel's claims. After Sharon Mitzel rested her case, the court granted Vogel's motion for a directed verdict. The court held Sharon Mitzel failed to present any evidence that she "gave up" any amount of the marital estate, to which she was otherwise entitled, in return for Fred Mitzel's promise to convey Section 19 to Alan and Eric Mitzel upon his death. The court held no evidence supported the conclusion she was damaged as a result of Vogel's alleged malpractice.

II

[¶10] This Court has discussed the four elements of a legal malpractice action against an attorney:

> The elements of a legal malpractice action against an attorney for professional negligence are: 1) the existence of an attorney-client relationship, 2) a duty by the attorney to the client, 3) a breach of that duty by the attorney, and 4) damages to the client proximately caused by the breach of that duty.

3

*Fahey v. Cook*, 2024 ND 138, ¶ 8 (quoting *Mullin v. Pendlay*, 2022 ND 205, ¶ 6, 982 N.W.2d 330). "Generally, expert testimony is necessary to establish the professional's standard of care (duty) and whether the professional's conduct in a particular case deviated from that standard of care (breach of duty)." *Johnson v. Bronson*, 2013 ND 78, ¶ 22, 830 N.W.2d 595 (quoting *Wastvedt v. Vaaler*, 430 N.W.2d 561, 565 (N.D. 1988)). "When it is alleged that an attorney negligently failed to perform some act on behalf of the client, the plaintiff must allege and prove performance of the act *would have benefitted the client*." *Id.* (quoting *Dan Nelson Constr., Inc. v. Nodland & Dickson*, 2000 ND 61, ¶ 14, 608 N.W.2d 267) (emphasis added). "In this context, the 'case-within-a-case' doctrine applies to alleged negligently-conducted litigation and requires that, but for the attorney's alleged negligence, the litigation would have terminated in a result *more favorable for the client*." *Id.* (quoting *Dan Nelson Constr.*, at ¶ 14) (emphasis added). A plaintiff alleging legal malpractice must prove the attorney's negligence was the proximate cause of the damage. *Id.*

III

[¶11] Alan and Eric Mitzel argue the district court erred when it granted partial summary judgment dismissing their legal malpractice claims for lack of standing. They assert Vogel's negligence "cost" them their interest in Section 19.

[¶12] The district court granted partial summary judgment to Vogel dismissing Alan and Eric Mitzel's claims on the basis they lacked standing. Alan and Eric Mitzel argued they had standing to sue for malpractice because they were direct beneficiaries of their parents' divorce decree. The court rejected the argument, concluding North Dakota law requires an attorney-client relationship for a plaintiff to bring a legal malpractice action. The court "refuse[d] to adopt the rule that non-clients can sue for legal malpractice if they are a direct beneficiary of a contract."

A

[¶13] Under N.D.R.Civ.P. 56, we review the district court's summary judgment decision de novo to decide whether the information available to the district court was free of any genuine issues of material fact and whether the moving party

4

was entitled to a judgment as a matter of law. *Fahey*, 2024 ND 138, ¶ 7; *Mullin*, 2022 ND 205, ¶ 5. "Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim." *Riemers v. Omdahl*, 2004 ND 188, ¶ 4, 687 N.W.2d 445 (quoting *Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615). A party resisting a summary judgment motion may not simply rely upon the pleadings or upon unsupported, conclusory allegations. *Id.* Although summary judgment is ordinarily inappropriate for legal malpractice actions, "[i]ssues of fact become issues of law when a reasonable person could reach only one conclusion from the facts." *Fahey*, at ¶ 7 (quoting *Mullin*, at ¶ 5).

B

[¶14] "The existence of standing is a question of law, which we review de novo." *Matter of Est. of Heath*, 2024 ND 23, ¶ 8, 2 N.W.3d 685. "To have standing to litigate an issue a party must have suffered some injury from the putatively illegal action and the party must assert his own legal rights and interests and cannot rest his claim on the legal rights and interests of third parties." *McColl Farms, LLC v. Pflaum*, 2013 ND 169, ¶ 10, 837 N.W.2d 359.

[¶15] In North Dakota, the existence of an attorney-client relationship is a required element of a legal malpractice action. *Fahey*, 2024 ND 138, ¶ 8. As explained in *Moen v. Thomas*, "a plaintiff in a legal malpractice case must establish the existence of an attorney-client relationship." 2001 ND 110, ¶ 11 n.2, 628 N.W.2d 325.

[¶16] The issues of standing and duty are interrelated. A plaintiff lacks standing unless the alleged wrong breached a duty owed to the plaintiff personally. *Haddy v. Caldwell*, 355 S.W.3d 247, 251 (Tex. App. 2011) ("Privity, which refers to the contractual connection or relationship existing between attorney and client, is directly related to the existence of duty and is necessary for a plaintiff to have standing to bring a legal malpractice claim."); *see also* 7A C.J.S. *Attorney & Client* § 386 (May 2024 Update) ("A party may pursue a malpractice action against an attorney only if that party has standing to do so by virtue of being owed professional duties by the attorney."); Dan B. Dobbs et al., *The Law of Torts* § 719

5

(2d ed. April 2024 Update) ("While most client-lawyer relationships are formed by express agreement, such a relationship may also arise by implication. In those situations and some others, the existence of a duty of care is indeed a live issue: without a client-lawyer relationship, there is rarely a duty, and without a duty, there can be no malpractice liability." (footnotes omitted)); *cf. Nodak Mut. Ins. Co. v. Ward Cnty. Farm Bureau*, 2004 ND 60, ¶ 14, 676 N.W.2d 752 (explaining an individual does not have organizational standing unless there was a duty owed to the individual personally). In other words, to have standing in a legal malpractice case, the plaintiff must show the defendant attorney owed a duty to the plaintiff. Otherwise, the plaintiff is asserting the legal rights and interests of third parties, not the plaintiff's own legal rights and interests. *McColl Farms*, 2013 ND 169, ¶ 10.

C

[¶17] "The existence of an attorney-client relationship is ordinarily a question of fact." *Moen*, 2001 ND 110, ¶ 13. However, Alan and Eric Mitzel do not contend they had an attorney-client relationship with Vogel. Thus, based on current case law, the district court correctly dismissed Alan and Eric Mitzel's legal malpractice claims on the basis they lacked standing.

D

[¶18] Alan and Eric Mitzel argue this Court should create an exception to the requirement a plaintiff in a legal malpractice action have an attorney-client relationship with the defendant attorney. They request we "adopt the rule that non-clients can sue for legal malpractice if they were a direct beneficiary." Citing *Holbach v. Holbach*, 2010 ND 116, 784 N.W.2d 472, and *Botner v. Botner*, 545 N.W.2d 188 (N.D. 1996), they assert it is not "too great a leap" to permit a child who was intended to receive a benefit under a divorce decree to bring a legal malpractice claim against the attorney who represented the child's parent in the divorce.

[¶19] Neither *Holbach* nor *Botner* involved a claim for legal malpractice. In *Holbach*, the former husband brought a quiet title action against his four children after one child, acting as the former wife's estate's personal representative,

6

attempted to convey her interest in property to himself and his three siblings. 2010 ND 116, ¶ 3. This Court reversed a summary judgment quieting title in the former husband because the judgment failed to recognize his "contractual obligation to devise the property to the four children in equal shares." *Id.* at ¶ 16. We explained a "settlement agreement that is wholly incorporated into the divorce judgment is merged into that judgment and ceases to be independently viable or enforceable," and "a judgment rendered in accordance with a stipulation entered between the parties in a marriage dissolution action is to be regarded and construed as a contract." *Id.* at ¶ 8. In reversing summary judgment, this Court explained the stipulation entered by the former wife and husband and incorporated into the divorce judgment constituted an enforceable contract because "it create[d] a clear obligation to perform, and the essential terms are reasonably certain and definite." *Id.* at ¶ 16. This Court held the former husband's title was subject to the terms of the divorce judgment. *Id.* This Court did not discuss standing.

[¶20] In *Botner*, a son brought an action, as a third-party beneficiary, against his father to enforce a stipulation incorporated into his parents' divorce decree that "unambiguously provided his parents would share the financial expense of providing a college education for any of their children." 545 N.W.2d at 189-90. This Court wrote, "[W]hen a stipulation is incorporated into a divorce judgment, we are concerned only with interpretation and enforcement of the judgment, not with the underlying contract." This Court concluded, as a matter of law, the divorce decree imposed an obligation on both of his parents to share in the cost of his college education. *Id.* at 190. Notably, however, the son's standing to enforce the divorce decree was not challenged and was not addressed. *Id.* at 189 n.1. Noting the issue of standing was not raised, the concurrence expressed "skepticism" over the son's standing, writing, "Ordinarily a litigant may assert only his own rights," and that the Court's "holding might well be different were the standing issue raised." *Id.* at 191-92 (VandeWalle, C.J., concurring).

[¶21] Although *Holbach* and *Botner* involved children enforcing stipulated provisions in their parents' divorce judgments, neither case involved a legal malpractice action or addressed standing, much less a nonclient's standing to bring a legal malpractice action. Neither *Holbach* nor *Botner* support expanding

standing to nonclient children to bring legal malpractice actions against a parent's attorneys for professional negligence in the parent's divorce action.

[¶22] Alan and Eric Mitzel primarily rely on *McIntosh County Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538 (Minn. 2008), and *Lucas v. Hamm*, 364 P.2d 685 (Cal. 1961), to support their position. Neither case involves a child's standing to bring a legal malpractice action based on an attorney's representation of the child's parent in a divorce action. *See Lucas*, 364 P.2d at 689 (concluding "intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations under his contract with the testator may recover as third-party beneficiaries"); *McIntosh Cnty. Bank,* 745 N.W.2d at 548 (concluding banks "were not direct and intended beneficiaries of the attorney-client relationship" between loan originator and law firm). Nor do the other cases cited by Alan and Eric Mitzel. *See Marker v. Greenberg*, 313 N.W.2d 4, 5-6 (Minn. 1981) (holding surviving joint tenant did not have a cause of action for legal malpractice against the attorney who drafted the joint tenancy deeds when the surviving joint tenant was never a client of the attorney); *Guy v. Liederbach*, 459 A.2d 744, 752-53 (Pa. 1983) (concluding "persons who are named beneficiaries under a will and who lose their intended legacy due to the failure of an attorney to properly draft the instrument" may bring a legal malpractice claim); *Blair v. Ing*, 21 P.3d 452, 464-68 (Haw. 2001) (permitting beneficiaries of testamentary trust to bring legal malpractice claim against grantors' attorney); *Auric v. Cont'l Cas. Co.*, 331 N.W.2d 325, 327 (Wis. 1983) (concluding "the beneficiary of a will may maintain an action against an attorney who negligently drafted or supervised the execution of the will even though the beneficiary is not in privity with that attorney"). However, a number of courts have rejected legal malpractice claims by children against attorneys who represented the children's parents in divorce actions.

[¶23] In *Pelham v. Griesheimer*, 440 N.E.2d 96 (Ill. 1982), the Illinois Supreme Court affirmed the dismissal of a malpractice action bought by children against the attorney who represented their mother in a divorce case. It did so despite Illinois permitting nonclients to recover in legal malpractice cases when "the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship." *Id.* at 99 The court wrote, "We

8

conclude that, for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." *Id.* at 100. "Applying the 'intent to directly benefit' test to the facts alleged in the complaint," the court wrote, "it is clear that the plaintiffs herein are not in the nature of direct third-party beneficiaries." *Id.* at 100-01. According to the court, "The attorney was hired primarily for the purpose of obtaining a divorce, property settlement, and custody of the minor children for [the mother], not to represent her children's interest." *Id.* at 101. Thus, the court wrote, the children were, "at best, only incidental beneficiaries in this situation." *Id.* The court held "that no duty in negligence was owed by the wife's attorney to his client's children." *Id.*

[¶24] The Wyoming Supreme Court reached a similar result in *In re Estate of Drwenski*, 83 P.3d 457 (Wyo. 2004). In *Drwenski*, a daughter sued her father's divorce attorney. *Id.* at 459. The district court granted summary judgment in favor of the attorney, finding the attorney owed no duty to the daughter. The supreme court affirmed. Addressing the third-party beneficiary analysis, the court stated "the inquiry is whether the client's intent to benefit the nonclient was the direct purpose of the attorney-client relationship. The duty does not extend to those incidentally deriving an indirect benefit." *Id.* at 462 (cleaned up). Thus, the court explained, "[t]he primary question is whether [the father] specifically intended to benefit [his daughter] when he retained [the attorney] to obtain his divorce." *Id.* at 465. The court found the father intended to benefit himself when he retained the attorney to obtain his divorce. *Id.* "While we recognize that a divorce client's children will be affected by the divorce," the court wrote, "that fact alone is not sufficient to support a finding that the attorney hired to obtain the divorce owes a duty to the children of the client." *Id.*

[¶25] Years later, the Wyoming Supreme Court affirmed dismissal of a son's legal malpractice action against his father's divorce attorney. *Schlegel v. Barney & Graham, LLC*, 536 P.3d 231, 237 (Wyo. 2023). The court found the son was not an intended beneficiary of the father's divorce proceedings. *Id.* Thus, the court concluded, the son "lacked standing to file a claim of legal malpractice" against his father's divorce attorney. *Id.* at 238; *see Strait v. Kennedy*, 13 P.3d 671, 672, 677

(Wash. Ct. App. 2000) (affirming summary judgment dismissing legal malpractice claim because mother's marital dissolution attorney did not owe a duty to mother's daughters); *Wilson-Cunningham v. Meyer*, 820 P.2d 725, 730 (Kan. Ct. App. 1991) (holding attorneys owed no duty to children for attorneys' actions taken or not taken in their father's divorce and affirming summary judgment dismissing legal malpractice action); *McGee v. Hyatt Legal Servs., Inc.*, 813 P.2d 754, 757 (Colo. App. 1990) (holding law firm representing mother in her dissolution of marriage proceeding owed no duty to daughter and trial court erred in not dismissing daughter's legal malpractice claim); *Haldane v. Freedman*, 22 Cal. Rptr. 445 (Cal. Ct. App. 1962) (affirming dismissal of minor children's malpractice action against the attorney who represented their mother in divorce action); *see also Strait*, at 674 (stating each jurisdiction that has "considered the issue of whether an attorney representing one party in a marital dissolution owes any duty to the client's children . . . has held that such an attorney does not owe such a duty"); 3 Ronald E. Mallen, *Legal Malpractice* § 28:9 (2024 ed. Jan. 2024 Update) (stating "children are not the intended beneficiaries of the client's divorce").

[¶26] Unlike North Dakota, the above courts have expanded standing in legal malpractice claims to nonclient direct third-party beneficiaries. Despite this, those courts still held the attorneys did not owe a duty to their client's children. Although the courts primarily based their holdings on a lack of duty, not standing, "the existence of duty . . . is necessary for a plaintiff to have standing to bring a legal malpractice claim." *Haddy*, 355 S.W.3d at 251; *see also* 7A C.J.S. *Attorney & Client* § 386. Thus, those courts' holdings support the conclusion a child lacks standing to bring a legal malpractice action based on an attorney's representation of the child's parent in a divorce action.

[¶27] The threshold inquiry in third-party beneficiary cases is "whether the plaintiff is an intended beneficiary of the transaction; if not, no further inquiry need be made." *Schlegel*, 536 P.3d at 237; *see also In re Est. of Drwenski*, 83 P.3d at 465 ("While the answer to the threshold question of intent does not totally resolve the issue, no further inquiry need be made unless such intent exists."). To be a direct and intended beneficiary of the attorney's services, the client and attorney had to enter into the contract for the direct benefit of the plaintiff. *See*

10

*McIntosh Cnty. Bank*, 745 N.W.2d at 547 ("A party is a direct beneficiary of a transaction if the transaction has as a central purpose an effect on the third party and the effect is intended as a purpose of the transaction."); *Pelham v. Griesheimer*, 417 N.E.2d 882, 884 (Ill. App. Ct. 1981) (stating the legal malpractice claim fails because there is no allegation the contract "was entered into between defendant and [the client] for the direct benefit of plaintiffs, which is an indispensable element of a third-party beneficiary theory of recovery"); *id.* at 886 ("We note that in these will-drafting cases the sole purpose of retaining the attorney is to directly benefit a known third party or parties."); *id.* at 887 (pointing out "that the line of out-of-state cases extending an attorney's duty to non-clients appears to be limited to a narrow range of factual situations wherein the client's sole purpose in retaining an attorney is to benefit directly some third party or parties"); *In re Est. of Drwenski*, 83 P.3d at 462 ("Under the third party beneficiary analysis, the inquiry is whether the client's intent to benefit the nonclient was the direct purpose of the attorney-client relationship.").

[¶28] Alan and Eric Mitzel argue the requirement a nonclient be "*the* directed and intended beneficiary of the representation" is "outdated language and most modern courts emphasize the fact that a non-client does not have to be *the* direct and intended beneficiary, but rather *a* direct beneficiary of the transaction." The *only* citation they provide to support their assertion about the position of "most modern courts" is *Meriturn Partners, LLC v. Banner & Witcoff, Ltd.*, 31 N.E.3d 451 (Ill. App. Ct. 2015), an Illinois intermediate appellate court decision.

[¶29] The intermediate appellate court in *Meriturn Partners* wrote, "The key consideration in determining whether an attorney owes a duty to a nonclient third-party is whether the attorney is acting at the direction of or on behalf of the client to benefit or influence a third-party." 31 N.E.3d at 457. In support of that statement, the appellate court cited *In re Estate of Powell*, 12 N.E.3d 14 (Ill. 2014). However, *Powell* quoted *Pelham*, stating that "for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." 12 N.E.3d at 20 (quoting *Pelham*, 440 N.E.2d at 100). Alan and Eric Mitzel have not demonstrated the Illinois Supreme Court has modified its test to

11

determine whether a nonclient third-party has standing to bring a malpractice action, much less how "most modern courts" address the issue.

[¶30] It is undisputed Alan and Eric Mitzel were not Vogel's clients and, thus, were not in privity with Vogel. As such, Vogel owed no duty to them under our current case law, meaning Alan and Eric Mitzel lacked standing to sue Vogel for its representation of their mother. Moreover, even if this Court were to recognize an expansion or exception to the privity requirement, as requested by Alan and Eric Mitzel, Vogel's legal services for Sharon Mitzel in this case involved securing a divorce and division of Fred Mitzel and Sharon Mitzel's marital estate; the "sole purpose" or "central purpose" of Vogel's legal services was not to benefit Alan and Eric Mitzel. Alan and Eric Mitzel did not present evidence that Sharon Mitzel retained Vogel's legal services for the sole or primary purpose of directly benefitting Alan and Eric Mitzel. Thus, under the facts of this case, we decline Alan and Eric Mitzel's invitation to expand the privity requirement for legal malpractice claims.

[¶31] Alan and Eric Mitzel argue the district court's dismissal of their claims "is unjust." We take no position on whether Alan and Eric Mitzel have or had a viable claim against Fred Mitzel. We simply hold that, as nonclients, they do not have standing to bring a legal malpractice claim against Vogel for its representation of their mother in her divorce action.

[¶32] We conclude the district court properly granted partial summary judgment dismissing Alan and Eric Mitzel's legal malpractice claims against Vogel.

IV

[¶33] Sharon Mitzel argues the district court erred when it granted Vogel's motion for a "directed verdict."

[¶34] After Sharon Mitzel rested her case at trial, the district court granted Vogel's motion for a "directed verdict." The court held Sharon Mitzel failed to present any evidence she was damaged because of Vogel's alleged malpractice. In its written order, the court wrote Sharon Mitzel "presented no evidence that

12

she gave up any amount of the marital estate to which she was otherwise entitled in return for" Fred Mitzel's promise to convey Section 19 to Alan and Eric Mitzel upon his death. The court therefore held "there was no evidence supporting a conclusion that [Sharon Mitzel] was damaged as a result of [Vogel's] alleged malpractice."

## A

[¶35] Rule 50, N.D.R.Civ.P., governs judgments as a matter of law. In N.D.R.Civ.P. 50, the term "judgment as a matter of law" has replaced the terms "directed verdict" and "judgment notwithstanding the verdict." *See id.*, Explanatory Note. "The standard for determining whether judgment as a matter of law should be granted is the same as that for a directed verdict or judgment notwithstanding the verdict." *Minto Grain, LLC v. Tibert*, 2009 ND 213, ¶ 8, 776 N.W.2d 549. Under N.D.R.Civ.P. 50(a)(1), a district court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."

[¶36] "A party moving for judgment as a matter of law 'is, in effect, claiming that the evidence is insufficient to create a question of fact for the jury. And whether or not the evidence is sufficient to create a question of fact for the jury is itself a question of law to be decided by the trial court.'" *Bjorneby v. Nodak Mut. Ins. Co.*, 2016 ND 142, ¶ 7, 882 N.W.2d 232 (quoting *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D. 1982)).

> The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. . . . In determining if the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which support

13

the verdict. The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal.

*Bjorneby*, at ¶ 7 (quoting *Minto Grain*, 2009 ND 213, ¶ 7). To decide whether the court erred in granting a motion for judgment as a matter of law, "this Court examines the trial record and applies the same standard as the district court was required to apply initially." *Id.*

B

[¶37] Sharon Mitzel argues the district court erred in its instruction regarding the measure of damages being what she "gave up" in the MTA to secure her sons an interest in Section 19.

[¶38] Generally, we review jury instructions "as a whole and, if the instructions, as a whole, correctly advise the jury on the law, they are sufficient although part of the instructions, standing alone, may be insufficient or erroneous." *State v. Goodale*, 2024 ND 120, ¶ 8, 8 N.W.3d 271 (quoting *State v. Olander*, 1998 ND 50, ¶ 18, 575 N.W.2d 658). Here, the district court did not file in the record the proposed instruction providing the measure of damages which Sharon Mitzel challenges on appeal. Because the court granted Vogel's motion after Sharon Mitzel presented her case, the court did not submit the case to the jury and final instructions were not given.

[¶39] Although the challenged instruction is not in the record, we can determine the measure of damages applied by the district court. In its order on motions in limine before trial, the court stated:

> Sharon's claim essentially boils down to, because of the Defendants' negligence, she did not get the benefit of the bargain in her Marital Termination Agreement. The question becomes, what damages, if any, did Sharon suffer because she did not get the benefit of the bargain. As is clear to all parties, this case is unique because when the MTA did not dispose of the property the way Sharon intended, it did not affect any interest she personally had in the property; Sharon intended to control the property eventually being with her sons, after their father passed. Therefore, the Court cannot simply say damages should be computed by the lost value of Sharon's

14

interest in the property. *Rather, the only way in which damages can be computed is through determining what, if anything, did Sharon give up in order to secure her sons an interest in the property.* This way of computing damages accurately asserts the proximate cause component of Sharon's negligence claim; any other way in which to calculate such damages would be either too speculative or failed to have the requisite "proximate" component.

(Emphasis added.) In granting Vogel's motion for judgment as a matter of law, the court stated on the record there was "no evidence" that Sharon Mitzel "had to *give anything up* in order for Mr. Mitzel to sign the settlement agreement [MTA] giving the boys [Section 19]." (Emphasis added.) In its subsequent written order, the court wrote, "Plaintiff presented no evidence that she *gave up any amount* of the marital estate to which he was otherwise entitled in return for the Promise" for her boys to get the Section 19 land upon Fred Mitzel's death. (Emphasis added.)

[¶40] The record shows the district court measured Sharon Mitzel's damages based on the amount she "gave up" in return for the conveyance of Section 19 to her sons upon Fred Mitzel's death. The parties do not dispute the court used this measure for its proposed instruction on damages and in granting judgment as a matter of law.

[¶41] Under N.D.C.C. § 32-03-01, "[e]very person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages." Section 32-03-20, N.D.C.C., provides the measure of damages for torts:

For the breach of an obligation not arising from contract, the measure of damages, except when otherwise expressly provided by law, is the amount which will compensate *for all the detriment proximately caused thereby*, whether it could have been anticipated or not.

(Emphasis added.) We have said, "A proximate cause is a cause that, as a natural and continuous sequence unbroken by any controlling intervening cause, produces the injury, and without it the injury would not have occurred." *Miller v. Diamond Res., Inc.*, 2005 ND 150, ¶ 10, 703 N.W.2d 316. While the determination

of proximate cause and the amount of damages generally present questions of fact, the proper measure of damages is a question of law. *See id.*; *Guild v. More*, 32 N.D. 432, 155 N.W. 44, 48 (1915) (stating "the measure of damages is purely a question of law"); *de Vries v. L & L Custom Builders, Inc.*, 968 N.W.2d 64, 86 (Neb. 2021) ("While the amount of damages presents a question of fact, the proper measure of damages presents a question of law.").

[¶42] As discussed, to recover for legal malpractice, there must be damages to the client "proximately caused" by the attorney's breach of the duty owed to the client. *Johnson*, 2013 ND 78, ¶ 22. One noted treatise explains, "The basic proposition is that an attorney is liable for all damages proximately caused by the wrongful act or omission." 2 *Legal Malpractice* § 21:8 (footnote omitted). This treatise continues:

> Deciding the issue of proximate causation usually resolves the issue of which damages are recoverable. The determination of proximate causation requires analysis of which of the injuries sustained, if any, foreseeably would have been expected to flow from the wrongful conduct. *In other words, the measure of damages is the difference between what the plaintiff's pecuniary position is and what it should have been had the attorney not erred.* The measure of damages necessarily depends on the nature of the attorney's undertaking for the client. The injury is measured at the time of the attorney's error. The client, usually a plaintiff, asserts the legal theory for those damages alleged to be proximately caused.

*Id.* § 21:8 (footnotes omitted) (emphasis added); *see also* 7A C.J.S. *Attorney & Client* § 401 ("An attorney's liability for legal malpractice is for all damages directly and proximately caused by the attorney's negligence or wrongful act or omission, but damages are generally limited to the client's actual losses."). "There is no certain or definite rule by which the amount of damages can be measured, and each case must be determined on its merits." *Carpenter v. Rohrer*, 2006 ND 111, ¶ 8, 714 N.W.2d 804; *see also Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Cap. Corp.*, 457 S.E.2d 28, 33 (Va. 1995) ("There is no single measure of damages in a legal malpractice case, and, generally, the appropriate measure must be determined by the facts and circumstances of each case.").

[¶43] Sharon Mitzel argues the measure of her claimed damages should be the value of the real estate she "lost" due to Vogel's alleged negligence. The district court's measure of damages was what Sharon Mitzel "gave up" to secure Section 19 for her sons.

[¶44] On our review, we conclude as a matter of law the district court's measure of damages comports with both N.D.C.C. § 32-03-20 and the requirement damages be "proximately caused" by the breach of the duty owed to the client. Although articulated in different words, what Sharon Mitzel "gave up" to secure Section 19 for her sons includes "all the detriment proximately caused" by Vogel's alleged legal malpractice. N.D.C.C. § 32-03-20. It also includes "the difference between what [her] pecuniary position is and what it should have been had the attorney not erred." 2 *Legal Malpractice* § 21:8. What Sharon Mitzel "gave up" is the amount of loss she actually sustained due to Vogel's alleged malpractice, *see* John E. Theuman, Annot., *Measure and elements of damages recoverable for attorney's negligence in preparing or conducting litigation—twentieth century cases*, 90 A.L.R.4th 1033, § 3 (1991) ("The general measure of damages in a legal malpractice action is the amount of loss actually sustained by the claimant as a proximate result of the attorney's conduct."), and puts her in the position she would have been in but for Vogel's alleged negligence, *see id.* ("Proper measure of damages in a legal malpractice case puts a plaintiff in a position he would have been had the attorney not been negligent."). If Sharon Mitzel "gave up" marital property to secure Section 19 for her sons, the court's measure of damages includes the value of that marital property.

[¶45] We conclude the district court did not err by measuring Sharon Mitzel's damages based on what she "gave up" to secure Fred Mitzel's conveyance of Section 19 to her sons upon his death.

C

[¶46] Sharon Mitzel argues that, even under the measure of damages used by the district court, the court erred in granting judgment as a matter of law because she proved damages. She argues she "gave up" "her interest in her former husband's businesses valued at $18.0 million."

17

[¶47] As discussed, in a legal malpractice action, the plaintiff has the burden to show damages proximately caused by the breach of the duty owed to the plaintiff. *Johnson*, 2013 ND 78, ¶ 22. This Court has explained, "the amount of the damages does not require proof to a degree of mathematical precision; however, the jury must have some factual basis for fixing damages." *Johnson v. Monsanto Co.*, 303 N.W.2d 86, 93 (N.D. 1981).

[¶48] In its order granting judgment as a matter of law, the district court explained:

> During the presentation of her case at trial, Plaintiff stated that in December 2009 at a mediation, she was told that she had to give up her interest in the parties' businesses in order for her boys to get the Section 19 land. However, at this time the land was already disposed of per the parties' Partial Stipulation from July 6, 2009. The Plaintiff has already secured the promise by Fred to give the land to the boys in July 2009. This was the only evidence provided by the Plaintiff regarding [d]amages. Plaintiff presented no evidence that she gave up any amount of the marital estate to which she was otherwise entitled in return for the [p]romise. Consequently, there was no evidence supporting a conclusion that Plaintiff was damaged as a result of Defendants' alleged malpractice.

[¶49] Sharon Mitzel argues the district court erred in concluding she did not give up anything to secure Section 19 for her sons. She contends she presented evidence that she gave up a "substantial amount of property" to secure the promise Section 19 would go to her sons. She further argues the additional litigation costs made necessary by Vogel's negligence are "fairly obvious" and support a fact issue for the jury's consideration on damages.

1

[¶50] After orally granting judgment as a matter of law, the district court entered a written order explaining its conclusion Sharon Mitzel "presented no evidence that she gave up any amount of the marital estate" to secure Section 19 for her sons. The written order reads:

On July 6, 2009, Fred and Sharon entered a stipulation as to the valuation and division of the real property they believed thereon ("the Stipulation"). The Stipulation awarded Section 19 to Fred subject to Fred's promise was part of their marital estate and the improvements to provide Section 19 to Alan and Eric upon Fred's death ("the Promise"). Plaintiff testified that the Promise was secured without any concession by Plaintiff to reduce her share of the marital estate in support thereof testifying "we just did it; it was no big deal."

Six months later - on December 22, 2009 - Plaintiff and Fred entered into a Marital Termination Agreement ("the MTA"). Consistent with the Stipulation, the MTA awarded Section 19 to Fred subject to the Promise previously agreed to on July 6, 2009.

. . . .

On December 24, 2009, judgment was entered dissolving Plaintiff and Fred's marriage ("the Decree"). As to the terms of the dissolution, the Decree restated *verbatim* the terms set forth in the MTA.

. . . .

During the presentation of her case at trial, Plaintiff stated that in December 2009 at a mediation, she was told that she had to give up her interest in the parties' businesses in order for her boys to get the Section 19 land. However, at this time the land was already disposed of per the parties' Partial Stipulation from July 6, 2009. The Plaintiff has already secured the promise by Fred to give the land to the boys in July 2009. This was the only evidence provided by the Plaintiff regarding Damages. Plaintiff presented no evidence that she gave up any amount of the marital estate to which she was otherwise entitled in return for the Promise. Consequently, there was no evidence supporting a conclusion that Plaintiff was damaged as a result of Defendants' alleged malpractice.

In its oral ruling, the court specifically stated the partial stipulation "was a binding agreement." It then emphasized that "there's no evidence" Sharon Mitzel "had to give up anything" in order for Fred Mitzel to sign the stipulation; "there is zero testimony . . . there was anything given up by Ms. Mitzel in order for Mr. Mitzel to sign that settlement agreement."

[¶51] Sharon Mitzel contends the district court erred in relying on the partial stipulation because it was not final. She asserts a voluntary stipulation "is not

final, nor is it binding." She further asserts Fred Mitzel "was free to change" the stipulation. Sharon Mitzel cites *Vann v. Vann*, 2009 ND 118, ¶ 12, 767 N.W.2d 855; *Eberle v. Eberle*, 2009 ND 107, ¶ 15, 766 N.W.2d 477; and *Kramer v. Kramer*, 2006 ND 64, ¶ 18, 711 N.W.2d 164, to support her assertion the stipulation was not binding on the district court. Sharon Mitzel provides no authority for her assertion Fred Mitzel "was free to change" the stipulation.

[¶52] The partial stipulation, signed by both Fred Mitzel and Sharon Mitzel, provides "the parties have settled a number of issues regarding the disposition and valuation of certain property which they agree will not have to be addressed at trial[.]" It continues, "NOW, THEREFORE, it is agreed by and between the parties, that the property outlined on the attached document shall be divided as outlined therein." Regarding Section 19, the parties agreed Section 19 would go to Fred Mitzel "[s]ubject to deeding to boys upon death." As noted by the district court, and confirmed in the record, Sharon Mitzel testified Fred Mitzel agreed to the disposition of Section 19 without asking for anything in return from her; Fred Mitzel did not demand Sharon Mitzel take less marital property before he entered the stipulation to deed the property to the boys upon his death.

[¶53] A stipulation is a contract; "an agreement to do or not to do a certain thing." N.D.C.C. § 9-01-01(1); *see also Tarver v. Tarver*, 2019 ND 189, ¶ 8, 931 N.W.2d 187 (stating "stipulations must comply with the law of contracts").

> This Court has recognized two different types of stipulations. A stipulation aimed at facilitating the course of a lawsuit is procedural in nature. A stipulation that affects the subject matter of a lawsuit is contractual in nature. Contractual stipulations deal with the rights or property at issue, and they are entitled to all the sanctity of a conventional contract.

*Discover Bank v. Hornbacher*, 2020 ND 260, ¶ 3, 952 N.W.2d 83 (citations omitted); *see also Lawrence v. Lawrence*, 217 N.W.2d 792, 796 (N.D. 1974) (stating contractual stipulations "are styled stipulations only because they occur in connection with litigation. In essence they are contracts and are entitled to all the sanctity of a conventional contract."). "Stipulations made by parties to a lawsuit may always be nullified by the court for good cause." *Lawrence*, at 796; *see also Vann*, 2009 ND

20

118, ¶ 12 (explaining although a district court should generally accept property settlement agreements in divorce actions, the court "should not blindly accept property settlement agreements" because of its statutory duty to make an equitable distribution of marital property); *Kramer*, 2006 ND 64, ¶ 8 ("Our decisions . . . require district courts to review settlement agreements to determine whether the agreement was entered freely and knowingly, without fraud, duress, menace or undue influence, and whether the agreement was unconscionable."); 27C C.J.S. *Divorce* § 985 ("As a general rule, in divorce proceedings, the court is not bound by a property settlement agreement between the spouses, but has jurisdiction to consider its validity and fairness, and, if the facts justify such action, may disprove or modify it."). If a court nullifies a stipulation, the stipulation is void, invalid, or of no effect. *See Black's Law Dictionary* 1282 (12th ed. 2024) (defining "nullification" as "[t]he act of making something void or of no effect"); *id.* (defining "nullify" as "[t]o make void; to render invalid").

[¶54] By its plain terms, the partial stipulation deals with the subject matter of the lawsuit by partially resolving some of the issues. The partial stipulation is, therefore, a binding contract between Fred Mitzel and Sharon Mitzel as to the matters addressed in the stipulation. Although the parties could not bind the district court, Fred Mitzel and Sharon Mitzel did bind themselves subject to the court's approval or rejection of their agreement. Both Fred Mitzel and Sharon Mitzel were bound by the stipulation's terms unless and until the court rejected or nullified the stipulation or they agreed to modify it. *Farmers All. Mut. Ins. Co. v. Hulstrand Const., Inc.*, 2001 ND 145, ¶ 12, 632 N.W.2d 473 (explaining parties to a contract may agree to modify or alter the terms of their original contract).

[¶55] Viewing the evidence in the light most favorable to Sharon Mitzel, and giving her all reasonable inferences to be drawn from the evidence, this Court agrees with the district court that Sharon Mitzel failed to provide evidence to create an issue of fact regarding whether she "gave up" marital property to secure Fred Mitzel's agreement to deed Section 19 to Alan and Eric Mitzel upon his death. Sharon Mitzel testified Fred Mitzel agreed to the disposition of Section 19 without asking for anything in return from her. This agreement was included in the MTA and the subsequent judgment.

[¶56] The result is the same if the term "lost" is used to measure damages instead of "gave up." Sharon Mitzel did not lose Section 19 due to Vogel's alleged negligence; Sharon Mitzel agreed in the partial stipulation and the MTA that she would not receive Section 19. Sharon Mitzel did not demonstrate a difference between the marital property she received and the marital property she should have received had Vogel not committed the alleged negligence. 2 *Legal Malpractice* § 21:8 ("[T]he measure of damages is the difference between what the plaintiff's pecuniary position is and what it should have been had the attorney not erred.").

[¶57] We conclude the district court did not err in determining Sharon Mitzel presented no evidence she "gave up" marital property to secure Fred Mitzel's agreement to deed Section 19 to Alan and Eric Mitzel upon his death.

2

[¶58] In granting judgment as a matter of law, the district court held "there was no evidence on the attorney's fees." Although Vogel argued "[t]here was no expert testimony to support a link between attorney's fees," the court did not state its ruling was based on the lack of expert testimony. The court did not address the issue of attorney's fees in its written order.

[¶59] Sharon Mitzel argues she presented evidence of the attorney's fees and costs she incurred due to Vogel's alleged negligence. She asserts the attorney's fees at issue were placed into evidence. Although there was no expert testimony on the attorney's fees, she argues the additional litigation made necessary by Vogel's negligence is "fairly obvious" and that there was "plenty of evidence" by which she could show the fees were caused solely by Vogel's negligence. Noting the legal bills were stipulated to and received into evidence, she contends the jury had the ability to "ferret" out any bills not related to the legal work caused by Vogel's negligence.

[¶60] As previously discussed, in a legal malpractice case, "the measure of damages is the difference between what the plaintiff's pecuniary position is and what it should have been had the attorney not erred." 2 *Legal Malpractice* § 21:8.

22

"The client, usually a plaintiff, asserts the legal theory for those damages alleged to be proximately caused." *Id.* § 21:8.

[¶61] In her complaint, Sharon Mitzel specifically requested damages for the attorney's fees "that had necessarily been expended in [her] current effort to obtain compensation," and for the attorney's fees "she incurred in the underlying action to correct the mistakes" of Vogel. A significant distinction exists between attorney's fees incurred in prosecuting the legal malpractice action and fees incurred in attempting to rectify purported malpractice. In *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998), the Tennessee Supreme Court noted,

> [T]here are three categories of attorney's fees that may constitute damages resulting from legal malpractice: (1) "initial fees" a plaintiff pays or agrees to pay an attorney for legal services that were negligently performed, (2) "corrective fees" incurred by the plaintiff for work performed to correct the problem caused by the negligent lawyer, and (3) "litigation fees," which are legal fees paid by the plaintiff to prosecute the malpractice action against the offending lawyer.

The court concluded the trial court "correctly held that corrective fees were recoverable," and that "the lower courts properly declined to award the plaintiffs their legal fees incurred as a result of prosecuting this action." *Id.* at 534, 535.

[¶62] In *Larson v. Norkot Manufacturing, Inc.*, 2002 ND 175, 653 N.W.2d 33, Justice Maring indicated in a concurring opinion that corrective fees were recoverable in legal malpractice actions. She wrote, "The necessity of incurring attorney's fees and costs in defending the Texas lawsuit was directly a result of the alleged legal malpractice and, therefore, constituted legally-recoverable damages." *Id.* at ¶ 45 (Maring, J., concurring). In *Larson*, this Court explained, "Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." 2002 ND 175, ¶ 10 (quoting *Wall v. Lewis*, 366 N.W.2d 471, 473 (N.D. 1985)). "Corrective fees" incurred by Sharon Mitzel to correct the problems caused by Vogel's alleged negligence may constitute an actual harm flowing from Vogel's alleged negligence. *See Akin*,

*Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 122 (Tex. 2009) (adopting the rule "that a malpractice plaintiff may recover damages for attorney's fees paid in the underlying case to the extent the fees were proximately caused by the defendant attorney's negligence").

[¶63] In granting judgment as a matter of law, the district court held "there was no evidence on the attorney's fees." The court did not hold that the requested attorney's fees were not recoverable in a legal malpractice action. It also did not hold expert testimony was required to prove the reasonableness and necessity of the attorney's fees. Thus, the issue is whether, viewing the evidence in the light most favorable to Sharon Mitzel, and giving her all reasonable inferences to be drawn from the evidence, a reasonable person could find Sharon Mitzel incurred corrective fees due to Vogel's alleged negligence.

[¶64] The legal billings show Sharon Mitzel incurred attorney's fees after the December 2009 divorce judgment. The district court did not explain why the legal billings could not be evidence Sharon Mitzel incurred corrective fees due to Vogel's alleged negligence. The legal billings list the dates and a brief description of the services provided. They also include the fees charged. Based on the dates and description of services provided, a reasonable person could determine some of the charged fees were incurred due to Vogel's alleged negligence. Thus, the legal billings provide "some factual basis for fixing damages." *Johnson*, 303 N.W.2d at 93.

[¶65] It was Sharon Mitzel's burden to prove her damages. *Johnson*, 2013 ND 78, ¶ 22. Vogel does not cite to any case where we hold an expert is required to prove damages in a legal malpractice case. Although an expert may have assisted the jury in determining damages, the lack of an expert does not mean a reasonable person could not determine Sharon Mitzel met her burden of demonstrating some fees were incurred due to Vogel's alleged negligence.

[¶66] Based on the record, a reasonable jury had a legally sufficient evidentiary basis to find Sharon Mitzel incurred corrective fees due to Vogel's alleged negligence. We therefore conclude the district court erred in granting judgment

24

as a matter of law on Sharon Mitzel's claim she incurred corrective attorney's fees and costs due to Vogel's alleged legal malpractice.

V

[¶67] We have considered the parties' remaining arguments and conclude they are not necessary to our decision or are without merit. We affirm the judgment in part and reverse in part; we remand the case for further proceedings consistent with this opinion.

[¶68] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr